**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-14-0000985**
**28-APR-2017**
**08:07 AM**

NO. CAAP-14-0000985


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
PATRICK DEGUAIR, JR., Defendant-Appellant, and
MALUFAFO VITO, Defendant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-0336)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Patrick Deguair Jr. (Deguair), appeals from the May 21, 2014 Judgment of Conviction and Sentence (Judgment) entered by the Circuit Court of the First Circuit (Circuit Court).[1]

On appeal, Deguair argues that: (1) the admission at trial of Jermaine Duckworth's (Duckworth) statements violated his right to confrontation, (2) the admission of hearsay from his alleged co-conspirators lacked sufficient indicia of reliability, (3) double jeopardy should have prohibited the second trial after egregious prosecutorial misconduct during the first trial denied his right to a fair trial, (4) Plaintiff-Appellee State of Hawaiʻi (State) failed to show a sufficient chain of custody for the Chevy Blazer, and (5) the consecutive terms of imprisonment imposed by the Circuit Court constituted an abuse of discretion as well as cruel and unusual punishment. Deguair asks this Court to reverse the Judgment or, in the alternative, vacate his conviction and remand the case for a new trial.

---

[1] The Honorable Glenn J. Kim presided.

I.

A.

This case arises out of the invasion of the Māʻili home of Robert McMeechan (Robert) and his family on November 27, 2007. Also living at the home were Aaron McMeechan (Aaron), Robert's son; Julie Ann DeRego (Julie Ann), Aaron's girlfriend; Heather McMeechan (Heather), Robert's daughter, and her boyfriend Clifford Mattos (Clifford). Marina Mattos (Marina), Clifford and Julie Ann's mother, were visiting.

The following is taken from the evidence presented by the State; Deguair testified in his own behalf and denied any involvement in the planning or execution of the robbery.

During the evening of November 26, 2007, Deguair, carrying a backpack, Duckworth, and Christopher Thurston (Thurston), arrived at the ʻEwa Beach home of a friend, "Pecpec." Deguair spoke of a plan to take a safe "in Waianae." Malufafo Vito (Vito) who was already at Pecpec's house, was asked to participate in the robbery. Deguair's idea was to impersonate DEA agents and Vito was to go into a particular bedroom and grab the safe. Deguair, Duckworth, Thurston and Vito were to wear DEA shirts and caps. Deguair, Duckworth, and Thurston would be wearing ski masks because "they used to go there." All wore latex gloves. Deguair also supplied two guns: one was silver/chrome colored equipped with a laser sight, the other was a black revolver. They left in a black Blazer, with Deguair driving.

At approximately 1:48 a.m. on November 27, 2007, the four men, wearing ski masks and shirts and hats with "DEA" printed on them, drove up in the faded Chevy Blazer. Three of the men entered the house, pointed guns, claimed to be "DEA" and directed the occupants of the house to lay on the floor. One of the four, later identified as Deguair, holding a silver-colored gun with a laser sight asked Aaron for his identification and tried to handcuff him. Deguair pushed Julie Ann and Marina to the floor, gave Heather "a little shove" and told her to get on the ground.

The tallest intruder was seen walking out of Aaron and Julie Ann's bedroom with her safe.[2] This person, who had no ski mask, and was later identified as Vito, carried a black revolver, approached Robert, put the gun to Robert's head, and asked Robert if he wanted to die.[3] Deguair--the person with the laser-sighted gun--told Vito to calm down and not to hurt "the old man."

The third intruder, described as heavyset, "sloppy looking," and later identified as Duckworth, was standing by and guarding the door. The fourth, later identified as Thurston, stayed near the Blazer and took the safe from Vito, placing it in the car.

The intruders left the way they came, in the Blazer. As it drove off, a gunshot was heard.[4] During the trip back to 'Ewa Beach, Deguair told them to remove the masks, caps, and shirts and put them in a bag.

Police were immediately called and arrived at the scene within minutes. Shortly thereafter, police on patrol in the 'Ewa Beach area spotted a vehicle matching the witnesses' description and pursued the vehicle to "Hau Bush,"[5] arriving as the occupants of the parked vehicle were in flight. Duckworth was discovered in the brush nearby, but the others escaped. Robert, Aaron, and Julie Ann were taken to Hau Bush and were asked to look inside the vehicle and identify the items within.[6]

---

[2]     Amongst other things, Aaron's Oakley sunglasses, car ownership papers, money, and Christmas gifts were in the safe. Julie Ann had placed money, watches, car ownership papers belonging to Robert and Marina, and Clifford's coin collection into the safe. There was also marijuana and crystal methamphetamine in the safe.

[3]     Others testified that Vito hit Robert with the gun, but Robert himself did not testify that he was hit. Vito denied hitting Robert at trial, although he admitted to shoving Robert to the floor with the gun in his hand.

[4]     Vito testified that he fired the revolver out of the Blazer window during an argument with Deguair.

[5]     Also known as Oneula Beach Park.

[6]     Julie identified her safe, her purse, a Sony PSP handheld game console, several jewelry items belonging to her, and "vise grip" pliers.

B.

On March 10, 2009, the State obtained an indictment against Deguair and Vito as co-defendants.  Deguair was indicted[7] with the following offenses allegedly committed on or about November 27, 2007:  Counts 1-6, Robbery in the First Degree, in violation of HRS § 708-840 (Supp. 2012); Counts 7-12, Carrying/Use of Firearm in Commission of the Separate Felony of Robbery in the First Degree, in violation of HRS § 134-21 (2011); Counts 19-24, Kidnapping, in violation of HRS § 707-720 (1993); Counts 25-30, Carrying/Use of Firearm in Commission of the Separate Felony of Kidnapping, in violation of HRS § 134-21 (2011); Count 37,[8] Place to Keep Pistol or Revolver, in violation of HRS § 134-25 (2011); Count 40, Burglary in the First Degree, in violation of HRS § 708-810 (2014); and Count 41, Carrying/Use of Firearm in Commission of the Separate Felony of Burglary, in violation of HRS § 134-21 (2011).

The first jury trial for Deguair commenced on July 22, 2013,[9] with the jury rendering its verdict on August 1, 2013.[10]

---

[7]     Malufafo Vito is not a party to this appeal.  Those counts in which he alone was charged are omitted from this opinion.

[8]     On July 19, 2013, the Circuit Court granted the State's motion for nolle prosequi without prejudice as to Count 37, Place to Keep Pistol or Revolver.

[9]     On Deguair's motion, judgment of acquittal was entered on Counts 4, 6, 10, and 12.

[10]     After the first trial, the jury found Deguair guilty of Counts 1-3 and 5--Robbery in the First Degree; Counts 7-9, and 11--Carrying/Use of Firearm in Commission of Robbery; Counts 25-30--Carrying/Use of Firearm in Commission of Kidnapping; Counts 19-24--Kidnapping; Count 40--Burglary in the First Degree; and Count 41--Carrying/Use of Firearm in Commission of Burglary.

During their deliberations, the first jury found that the prosecution (1) did not sufficiently prove that Count 1--Robbery and Count 19-- Kidnapping were not in a continuing course of conduct or were committed with separate intents; (2) did not sufficiently prove that Count 2--Robbery and Count 20--Kidnapping were not in a continuing course of conduct or were committed with separate intents; (3) did not sufficiently prove that Count 3--Robbery and Count 21--Kidnapping were not in a continuing course of conduct or were committed with separate intents; (4) did not sufficiently prove that Count 5--Robbery and Count 23--Kidnapping were not in a continuing course of conduct or were committed with separate intents.  As a result, the Circuit Court dismissed Kidnapping Counts 19, 20, 21, and 23.

After the close of the first trial, the Circuit Court dismissed Use of Firearm Counts 25, 26, 27, and 29 because these Kidnapping charges were dismissed.

4

Deguair moved to dismiss the case on August 9, 2013, arguing that by submitting an improperly redacted copy of the government's cooperation agreement with Vito, the trial prosecutor committed egregious misconduct that should bar retrial under the double jeopardy prohibitions of the United States and Hawai'i Constitutions; in the alternative, Deguair asked for a retrial. The Circuit Court found that the prosecutor's action was "inadvertent," did not constitute misconduct, and denied the motion to dismiss. However, the Circuit Court granted Deguair's alternative request for a new trial on the basis that the jury was exposed to the fact of Duckworth's death and "the extremely prejudicial nature of such knowledge." Deguair did not appeal from the denial of his motion based on prosecutorial misconduct.

The second jury trial commenced on February 18, 2014, after which Deguair was found guilty of Count 1, Robbery in the First Degree; Counts 7, 28, 30, and 41, Carrying/Use of Firearm in Commission of a Separate Felony; Counts 22 and 24, Kidnapping; and Count 40, Burglary in the First Degree.[11]

On May 21, 2014, the Circuit Court sentenced Deguair as follows: In Count 1--twenty years with a mandatory minimum of ten years for use of a firearm; Counts 7, 28, 30, and 41--twenty years; Counts 22 and 24--ten years with a mandatory minimum of five years; and Count 40--ten years with mandatory minimum of five years. Terms in Counts 1, 22, 24, and 40 were to run concurrently with each other and consecutively to terms in Counts 7, 28, 30, and 41 which were to run concurrent to each other and all terms were to run consecutively to terms imposed in CR. NO. 08-1-0773.

From this Judgment, Deguair appeals.

---

[11] The Circuit Court granted Deguair's motion for judgment of acquittal at the close of the State's case as to Count 5--Robbery I and Count 11--Carrying/Use of Firearm in the Commission of the Separate Felony of Robbery.

II.

A.

In his first point on appeal,[12] Deguair challenges two orders: (1) the August 21, 2012 Order Granting in Part and Denying in Part State's Motion for an Order Allowing the Admissibility of Certain Statements Made by Jermaine Duckworth in the Trial for Defendant Patrick Deguair, Jr. (Order Granting State's Motion in Limine);[13] and (2) the July 25, 2013 Order Granting in Part and Denying in Part Defendant Patrick Deguair, Jr.'s Motion in Limine No. 1 (Order Denying Deguair's Motion in Limine).[14] Deguair argues that these orders violated his rights

---

[12] Deguair's point on appeal does not comply with Hawai‘i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) insofar as it fails to quote the evidence that he claims was improperly admitted. Given the multiple rulings and the uncertain nature of the evidence challenged, it is not clear precisely what evidence we are reviewing and this failure alone could be the basis to disregard the point. See State v. Ortiz, 91 Hawai‘i 181, 197-98, 981 P.2d 1127, 1143-44 (1999) (failure to provide record citations or substance of the evidence as basis to refuse review of point). Counsel is warned that future violations of our rules could result in sanctions, including disregard of the noncompliant point on appeal. Nevertheless, as appellate courts in this jurisdiction attempt to reach the merits of the appeal, we will address this point insofar as we are able.

[13] The Circuit Court ruled,

> IT IS HEREBY ORDERED that the State may introduce the following statements made by [Duckworth] during its case in chief:
>
> 1. [Duckworth's] November 27, 2007 utterance made in the presence of Officers Alfred Collins and Cindy Kaneshiro under HPD report no. 07-471270.
>
> 2. [Duckworth's] two November 28, 2007 statements to Detective Jack Snyder under HPD report no. 07-471270.
>
> 3. [Duckworth's] December 12, 2007 statement to Detective Brian Johnson under HPD report no. 07-471270.
>
> IT IS FURTHER ORDERED that statements made by [Duckworth] to Julie Ann Derego, Aaron McMeechan, Heather McMeechan, Robert McMeechan concerning the November 27, 2007 robbery are precluded.

The Circuit Court later reconsidered this ruling, excluding the statement in paragraph three. See also n.16 infra.

[14] The Circuit Court ruled,

> 1. Because the Court ruled that [Duckworth's] December 12, 2007 statement is not admissible, this order pertains only to [Duckworth's] November 28, 2007 interviews taken at 5:19 a.m. - 5:22 a.m., and 7:17 a.m.- 7:27 a.m.

under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and article I sections 5 and 14 of the Hawai'i Constitution because there was insufficient evidence that "Deguair acted with the particular purpose of preventing Duckworth from testifying regarding" the instant robbery.

Foundation for the admission of evidence must be shown by a preponderance of the evidence.[15] State v. McGriff, 76 Hawai'i 148, 157, 871 P.2d 782, 791 (1994) (citing Bourjaily v. United States, 483 U.S. 171, 176 (1987)). We review the trial court's determination using the clearly erroneous standard of review. Id.

In Giles v. California, 554 U.S. 353 (2008), the United States Supreme Court reviewed the historical underpinnings of the "forfeiture by wrongdoing" exception to the right to confront and concluded that it "applies only when the defendant 'engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.' Fed. Rule Evid. 804(b)(6). We have described this as a rule 'which codifies the forfeiture doctrine.'" Id. at 367 (quoting Davis v. Washington, 547 U.S. 813, 833 (2006)); see also Hawaii Rules of Evidence Rule 804(b)(7) ("Forfeiture by wrongdoing. A statement offered against a party that has procured the unavailability of the declarant as a witness.").

---

[14](...continued)
    2.    The following motions are hereby granted: paragraphs 7, 8(b), 8(c), 9, 10, 11(a)-h, and 11(j)-(k).

    3.    The following motions are hereby denied: paragraphs 8(a), 8(d), and 11(i).

        a.    In regard to paragraph 8(d), the motion is denied because the State does not intend to present anything in particular described as described therein.

[15]    Deguair also argues that a higher burden of proof should be used in determining whether or not Deguair purposely caused Duckworth's absence when considering, de novo, whether the forfeiture by wrongdoing exception to the rule against hearsay is applicable here. However, Deguair did not make this argument before the Circuit Court and does not include it in his points on appeal. HRAP Rule 28(b)(4) provides that "[p]oints not presented in accordance with [HRAP Rule 28(b)] will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." As Deguair presents no binding authority for the proposition that the Circuit Court was required to apply the clear and convincing standard of proof, we conclude no plain error was committed.

The admissibility of Duckworth's statements was first addressed by Judge Town in CR No. 08-1-0533, the prosecution of Deguair for the killing of Duckworth (Murder Case). In the Murder Case, the prosecution moved to present statements made by Duckworth about the underlying facts in the instant case as foundation for admission of the statements and motive for the murder. Judge Town found, in relevant part, that:

12. On November 28, 2007, the day after his arrest, Duckworth gave two statements to Detective Jack Snyder. In his second statement Duckworth identified "Pat" as an occupant in the getaway car. "Pat" picked him up in the same Blazer from which Duckworth and others fled when stopped by the police. According to Duckworth, the original plan was to commit a burglary in Kalihi, but they eventually decided to rob Julie Ann of a safe. Duckworth wore a black DEA shirt that "Pat" had given to him. All of them wore the same shirt. "Pat" is Defendant Patrick W. Deguair, Jr. (Defendant).

13. On December 12, 2007, Duckworth gave a statement to Detective Brian Johnson. In that statement Duckworth detailed Defendant's and [Vito's] involvement in the robbery. After the robbery, Duckworth alleged that Defendant broke his jaw and threatened to kill him. Duckworth identified Defendant and Vito in separate photographic lineups.

. . . .

15. On March 27, 2008, lifeguards at Yokohama Bay beach found Duckworth's lifeless body lying on the rocks, below a cliff, at a location several hundred yards from Yokohama Bay beach.

. . . .

18. Witnesses reported to the police that during the early morning hours of March 27, 2008, Defendant restrained Duckworth at a Waipahu residence. At least one of these witnesses heard Defendant accuse Duckworth of speaking to the police.

19. A witness reported to the police that after Defendant restrained Duckworth, Defendant transported Duckworth in a sports utility vehicle to Yokohama Bay, where Defendant shot Duckworth in the back of the head with a pistol equipped with a silencer and then pushed Duckworth to the rocks below.

. . . .

21. The State has proved by a preponderance of the evidence that Defendant killed Duckworth.

22. The State has proved by a preponderance of the evidence that Defendant killed Duckworth with the specific intent to prevent Duckworth from cooperating with law enforcement and/or testifying against him in a future prosecution concerning the November 27, 2007 robbery.

Relying on Judge Town's ruling in the Murder Case, the State filed its June 28, 2012 "State's Motion for an Order Allowing the Admissibility of Certain Statements Made by [Duckworth] in the Trial for [Deguair]" prior to the first trial in the instant case. Deguair also filed a motion *in limine*, seeking to preclude the introduction of Duckworth's statements in the first trial. The Circuit Court ruled,

> First of all, I'm going to take judicial notice of all the records and files in this case and also in [Deguair's] other cases. And this is how I see it and I'm going to -- I'm going to affirm my prior ruling again. I still don't see any cogent reasons to -- to rule counter to what Judge Town ruled in the first trial and what I ruled in the second trial, meaning both of the murder trials, both of the prior murder trials.
>
> I think the State has clearly shown by at least a preponderance of the evidence that [Deguair] caused [Duckworth's] death and for the specific purpose of keeping him from testifying against [Deguair]. I think that the State has met all the elements of the forfeiture by wrongdoing hearsay exception under [Hawaii] Rules of Evidence 804. And I think pursuant to the applicable case law, mainly by the U.S. Supreme Court, these -- these statements all qualify under that general rubric.
>
> So as far as the -- the three taped statements from Duckworth himself to the detectives, I'm going to allow the -- the State to elicit them if it wants to at this trial for essentially the same reasons, under the same reasoning as far as the general legal analysis and rubric as to admissibility under the hearsay rule and the confrontation clause in this case also.
>
> I'm also going to allow testimony by one or both of these officers, Collins and Kaneshiro, as to the alleged utterances that [Duckworth] made to them and/or in their presence on the same night of the alleged robbery, sounds like, to me, within minutes of -- of the robbery and his own apprehension in the case. Because I think that -- well, I'm going to allow them. [16]

Shortly before the second trial, the Circuit Court reaffirmed its rulings made in the first trial.

On appeal, Deguair argues only that "there was no evidence that Deguair knew or suspected Deguair [sic] had spoken to the police about the 11/27/07 robbery. There was a lack of evidence that Deguair expected to be charged in connection with

---

[16] The Circuit Court excluded statements made to the complaining witnesses in this case. Ultimately, the Circuit Court *sua sponte* reconsidered and ruled that only certain statements made by Duckworth would be admitted. These were (1) a November 27, 2007 statement in the presence of Officers Alfred Collins and Cindy Kaneshiro, and (2) two statements to Detective Jack Snyder on November 28, 2007.

the 11/27/07 robbery. There was no showing of a specific connection with the [Mā'ili] robbery." Deguair does not specifically address Duckworth's statements that Deguair had threatened and assaulted him, the testimony that Deguair was overheard accusing Duckworth of speaking to the police, or why this evidence did not support, by a preponderance of the evidence, that Deguair intended to prevent Duckworth from testifying against Deguair. The findings of Judge Town and the Circuit Court were not clearly erroneous.

B.

Relying on his right to confront witnesses under the state and federal constitutions, Deguair challenges the admission of statements made by "alleged co-conspirators"[17] Duckworth and Thurston[18] and designates the following conclusion of law as error:

> 8.  Based on its review of the records and files of this case, the court concludes that the statements made by Thurston and Duckworth to, or in the presence of, Vito during the planning and execution of the November 27, 2007 armed robbery . . . were made during the course and in furtherance of a conspiracy.

Deguair argues on appeal only that there was no showing that the statements had sufficient indicia of reliability

Deguair does not claim that the statements involved were testimonial. In <u>State v. Fields</u>, 115 Hawai'i 503, 516, 168 P.3d 955, 968 (2007), the Hawai'i Supreme Court reasoned that, "to the extent that the hearsay statements in question are nontestimonial, <u>Davis</u> places them beyond the reach of the federal

---

[17]  HRE Rule 803(a)(2) provides in pertinent part,

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(a)  Admissions.

. . . .

(2)  Vicarious admissions. A statement that is offered against a party and was uttered by . . . (C) a co-conspirator of the party during the course and in furtherance of the conspiracy.

[18]  Again, Deguair's point on appeal does not comply with HRAP Rule 28(b)(4) as, at a minimum, it fails to quote the substance of the evidence in issue.

confrontation clause" and held that it would continue to apply the test articulated in <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980) for the purposes of the Hawai'i right to confrontation.

> As regards the first part of the <u>Roberts</u> test, we have remained resolute that, under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants. . . .
>
> Upon demonstrating that a witness is unavailable, under the second half of the Roberts test, only statements that bear "adequate indicia of reliability" may be admitted into evidence. "Reliability" may be shown in two ways. First, reliability may be inferred without more if it falls within a firmly rooted hearsay exception.
>
> Alternatively, reliability may be demonstrated upon a showing of particularized guarantees of trustworthiness. The United States Supreme Court has declined to endorse a mechanical test for determining particularized guarantees of trustworthiness under the Confrontation Clause. Instead, the Court has determined that particularized guarantees of trustworthiness must be shown from the totality of the circumstances and that the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.

<u>Fields</u>, 115 Hawai'i at 512-13, 168 P.3d at 964-65 (citations, some quotation marks, and brackets omitted) (quoting <u>State v. Sua</u>, 92 Hawai'i 61, 71-72, 987 P.2d 959, 969-70 (1999)). One such "firmly rooted hearsay exception" is the co-conspirator exception. <u>Bourjaily</u>, 483 U.S. at 183; <u>State v. McGriff</u>, 76 Hawai'i 148, 156, 871 P.2d 782, 790 (1994).

As the proponent needs to show only one method under the second half of the <u>Roberts</u> test and it is undisputed that the evidence at issue were statements of co-conspirators, reliability could be inferred. The Circuit Court did not err in admitting the statements of co-conspirators.

C.

Relying on <u>State v. Rogan</u>, 91 Hawai'i 405, 984 P.2d 1231 (1999), Deguair argues that the Circuit Court should not have granted his alternative relief[19] of a new trial after egregious prosecutorial misconduct was committed in his first

---

[19] Although Deguair did not seek the remedy of a retrial in his motion, in his memorandum in support, he asked for a retrial in the alternative.

trial. In Rogan, the Supreme Court of Hawaiʻi laid out a framework for analyzing the question of prosecutorial misconduct.

> Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of "whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Factors to consider are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant.

91 Hawaiʻi at 412, 984 P.2d at 1238 (citations omitted). Deguair argues: (1) The misconduct was not inadvertent, and even if it was, a finding of inadvertence does not preclude a finding of misconduct, (2) He was denied a fair trial due to the misconduct, and (3) The misconduct was not harmless as this was not a case of overwhelming evidence. The decision to grant a new trial is reviewed for an abuse of discretion but matters of constitutional law are reviewed de novo. Id., at 411-12, 984 P.2d at 1237-38.

There is no dispute that reference to the death of Duckworth was not supposed to be presented to the jury. It was in the State's exhibit and it was due to the inaction of the deputy prosecutor (DPA) that it was.

The Circuit Court made a finding that the exposure of the jury to this information was "inadvertent" and there is substantial evidence to support this finding. The DPA made representations in his memorandum in opposition to Deguair's motion to dismiss "that the incomplete redaction in Trial Exhibit 121 resulted from an inadvertent oversight." The phrase, "The Death of Jermaine Duckworth" appeared eleven times in the original document but was not redacted only from the five-line "subject line" of the cooperation agreement memorandum. Although the other ten redactions were placed on the record in open court and agreed-to by defense counsel, a redaction of the offending line was not mentioned, without objection or comment by defense counsel. Before the Circuit Court, the defense explicitly eschewed the argument that the failure to completely redact was

12

intentional.[20] Given the circumstances, we cannot say the finding of inadvertence was clearly erroneous.

As the error was not discovered until after verdict, there was no curative instruction given.

The Circuit Court concluded that "I don't think there's any way that the court can find that the outside influence in this case, which was the not-sufficiently-redacted cooperation agreement, was harmless beyond a reasonable doubt." As a result, the Circuit Court ordered a new trial.

The question then becomes whether it was error for the Circuit Court to order a retrial rather than dismiss the case.

Even under Rogan,

> the standard adopted for purposes of determining whether double jeopardy principles bar a retrial caused by prosecutorial misconduct requires a much higher standard than that used to determine whether a defendant is entitled to a new trial as a result of prosecutorial misconduct. Double jeopardy principles will bar reprosecution that is caused by prosecutorial misconduct only where there is a highly prejudicial error affecting a defendant's right to a fair trial and will be applied only in exceptional circumstances such as the instant case. By contrast, prosecutorial misconduct will entitle the defendant to a new trial where there is a reasonable possibility that the error complained of might have contributed to the conviction[] (i.e., the error was not "harmless beyond a reasonable doubt"). See, e.g., [State v. Sawyer, 88 Hawai'i 325, 329 n.6, 966 P.2d 637, 641 n.6 (1998)] (citations omitted).

Rogan, 91 Hawai'i at 423 n.11, 984 P.2d at 1249 n.11 (emphasis added; original emphasis omitted). Thus, the Rogan court acknowledged that a retrial could be ordered where the error was not harmless beyond a reasonable doubt but did not rise to the level of "exceptional circumstances such as" those found in Rogan, i.e., an appeal to racial prejudice. Given the circumstances of this case, we conclude that the Circuit Court did not err in granting a new trial rather than dismissing the case.

---

[20] Indeed, when arguing in support of Deguair's motion to dismiss, counsel made it clear that it was not arguing the DPA did it intentionally, taking the position that the intent of the prosecutor was irrelevant to the analysis.

D.

Deguair argues that the State failed to show a sufficient chain of custody for unspecified[21] interior photographs taken of and items found in the Blazer. We review this issue under the abuse of discretion standard. See State v. Nakamura, 65 Haw. 74, 81-82, 648 P.2d 183, 188-89 (1982).

> In showing chain of custody, all possibilities of tampering with an exhibit need not be negated. Chain of custody is sufficiently established where it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence. An accounting of hand-to-hand custody of the evidence between the time it is obtained and the time admitted to trial is not required in establishing chain of custody. And despite the mere possibility that others may have had access to the exhibits, there exists a reasonable certainty that no tampering took place.

State v. DeSilva, 64 Haw. 40, 41-42, 636 P.2d 728, 730 (1981) (citations omitted). While a more elaborate foundation is required to identify evidence that is easily substituted, such as marijuana, physical evidence with unusual characteristics does not require such a foundation. Id., at 40, 41-42, 636 P.2d at 730 (citing State v. Mayes, 286 N.W.2d 387, 391 (Iowa 1979)).

Here, Deguair relies on several facts in support of his argument that an insufficient chain of custody was established: the Hau Bush area where the Blazer was found was dark and remote, the Blazer was found during the early morning hours, the police could not account for about fifteen hours regarding what happened to the Blazer from the time the police left the vehicle at Hau Bush until it was brought to the police station, the police could not say which person actually transported the vehicle to the police station, and a complete inventory of the contents was not done until the Blazer was at the police station.

The Circuit Court ruled that the Blazer was a distinctive vehicle that was identified by Vito, photographs thereof were stipulated into evidence by the defense, and photographs of items within the Blazer were taken while it was at

---

[21]    State's Exhibits 26 through 44 are photographs of the Blazer's exterior and interior taken at Hau Bush by then-Evidence Specialist John Wadahara. They were received into evidence without objection by the defense. Therefore Deguair's point of error as to these exhibits is waived, and the admission of any other photographs taken of the interior is at best, harmless error.

Hau Bush. Julie Ann and Aaron identified some of the items found in the Blazer at Hau Bush.

The Circuit Court's ruling that there was an adequate chain of custody is supported by the evidence presented. Officer Tokunaga testified that he heard a "radio dispatch of a reported robbery", after which he saw and followed the Blazer (license "EFT-631") until it came to a stop at Hau Bush and the occupants fled. Vito identified the Blazer in a photograph as the vehicle used while committing the crime and identified many of the items the police recovered from inside the Blazer. Photographs of the interior and exterior of the Blazer were taken at Hau Bush and received into evidence without objection. Julie Ann and Aaron identified some of the items found in the Blazer at Hau Bush as their property, and identified other items after they were recovered by HPD evidence personnel from the Blazer while in their evidence locker as their property or items used by the robbers. Detective Snyder explained the procedures for securing a vehicle for evidence. The State presented substantial evidence to support the conclusion that, to a reasonable degree of certainty, the evidence had not been tampered with. Deguair advances no argument that there was evidence of tampering. Therefore, the Circuit Court's admission of items recovered from the Blazer was not an abuse of discretion.

E.

Deguair argues that the Circuit Court abused its discretion by imposing consecutive terms of imprisonment as such a sentence constituted cruel and unusual punishment in this case.

Deguair argues that the Circuit Court abused its discretion by failing to consider the fact that Deguair could be rehabilitated during his incarceration through drug treatment. We review this issue under the abuse of discretion standard.

> A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors that indicate a plain and manifest abuse of discretion are arbitrary or capricious actions by the judge and a rigid refusal to consider the defendant's contentions. In general, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Tauiliili, 96 Hawai'i 195, 198, 29 P.3d 914, 917 (2001) (citations, internal quotation marks, and brackets omitted).

Under HRS § 706-606 (2014), in determining the particular sentence to be imposed, the sentencing court shall consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) The need for the sentence imposed: (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (b) To afford adequate deterrence to criminal conduct; (c) To protect the public from further crimes of the defendant; and (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) The kinds of sentences available; and (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(Format altered.)

Although it appears the Circuit Court did not mention defense counsel's rehabilitation argument, "absent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." State v. Hussein, 122 Hawai'i 495, 503, 229 P.3d 313, 321 (2010) (citations, internal quotation marks, and brackets omitted). What is required of the court are "the reasons for imposing a consecutive sentence." Id., at 510, 229 P.3d at 328. Therefore, while it is important that the sentencing court explain its rationale, the court need not explicitly address every argument made by the parties.

Here, the Circuit Court did state its reasons for the sentence. Specifically, the Circuit Court focused on the outrageousness of Deguair's crime, that Deguair has committed similar crimes in the past, and that Deguair appeared to have been the "ringleader" in this crime. Therefore, the Circuit Court did not abuse its discretion in failing to expressly consider the argument that Deguair could be rehabilitated.

Deguair also appears to argue that the Circuit Court abused its discretion by giving Deguair consecutive sentences when Vito, who, according to Deguair and the testimony of some of the witneses, engaged in far more egregious conduct, was only

given a concurrent sentence. In making this argument, Deguair points to HRS § 706-606 (4), which explains that the court must consider, "The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Deguair argues that there is ample evidence that Vito was the ringleader. However, Deguair fails to acknowledge that Vito testified Deguair was the ringleader, came up with the plan and the means, and the Circuit Court found that it was likely that this was true.

The Circuit Court considered the role Deguair played in the crime charged, based on the evidence provided. The Circuit Court did not abuse its discretion in considering the level of Deguair's participation in deciding on the appropriate sentence.[22]

Deguair has failed to show his sentence is cruel or unusual punishment.

III.

For the foregoing reasons, the May 21, 2014 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, April 28, 2017.

On the briefs:

Dwight C.H. Lum,
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[22] Deguair argues in his reply brief that the Circuit Court improperly considered evidence from the first trial as it commented at sentencing that it had "heard both trials in this case" including "the first one." Deguair argues that, after his motion for new trial was granted, the evidence and verdicts from the first trial were a nullity and that the Circuit Court should not have used them as a basis for imposing the consecutive sentences. However, as Deguair did not raise this argument in his opening brief and a reply brief must be confined to matters presented in the answering brief, we deem it waived. HRAP Rule 28(b)(4), (b)(7), and (d).